UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                                      NO. 24-99

SCHARMAINE LAWSON BAKER                 SECTION "R" (1)

## ORDER AND REASONS

Before the Court is defendant's opposition to the admissibility of government exhibits.[1]  The government has filed a response.[2]  The Court overrules all of defendant's objections, except as to government exhibit 803 and as to government exhibits 502-504, on which the Court defers ruling.

## I.     BACKGROUND

On April 25, 2024, the Government filed an indictment charging Scharmaine Lawson Baker with six counts of health care fraud.[3]  The government alleges that defendant executed a scheme and artifice to defraud Medicare by submitting or causing to be submitted claims for medically unnecessary cancer genetic testing ("CGx testing")[4] during the time period of

---

[1]     R. Doc. 57.
[2]     R. Doc. 64.
[3]     R. Doc. 1.
[4]     *Id.* at 5.

1

around October 2018 to around October 2019.[5]  It further alleges that defendant received a kickback per CGx testing order.[6]

On June 30, 2025, the parties provided exhibit stipulations. and defendant filed an opposition to the admissibility of certain government exhibits.[7]  Defendant objects to the following government exhibits: Patient files (130, 131, 132, 133); a bank record (200); Bronson medical documents (409, 411); Lawson Baker authored books (502, 503, 504); Lawson Baker bankruptcy records (600-605);[8] nursing board records (700-703);[9] summary exhibits (800-803).  The government filed a reply.[10]  The Court considers the objections below.

## II.    LAW AND DISCUSSION

### A. Patient Files (Government Exhibits 130-133)

The government seeks to introduce into evidence Bronson patient files from multiple individuals for whom defendant ordered CGx testing.

---

[5]    *Id*. at 6-7.

[6]    *Id*. at 8.

[7]    R. Doc. 57.

[8]    The Court has already held evidence of the concealment of her Bronson income in the bankruptcy to be admissible.  R. Doc. 62.

[9]    Defendant identifies these exhibits as challenged but states that defendant has no objection to their admissibility.  As such, the Court will not discuss these exhibits.

[10]    R. Doc. 64.

Defendant objects only to the introduction of the files relating to one individual—A.R.   There are four exhibits related to A.R.: two recordings of calls between A.R. and defendant,[11] the CGx requisition form for A.R.,[12] and the Bronson patient notes for A.R.[13]   Defendant's principal objection is that these exhibits are inadmissible hearsay.  As explained below, the Court finds these four exhibits admissible.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  *United States v. Watkins*, 591 F.3d 780, 786 (5th Cir. 2009) (quoting Fed. R. Evid. 803) (internal quotations omitted).  "Testimony not used to establish the truth of the assertion, however, does not fall under the proscriptions against the use of hearsay."  *Id.* (quoting *United States v. Vizcarra-Porras*, 889 F.2d 1435, 1439 (5th Cir. 1989), *cert. denied*, 495 U.S. 940 (1990)) (internal quotations omitted).  As to the two calls, the government argues that A.R.'s statements are relevant for their effect on defendant, not their truth.  In the calls, A.R. said that she called Medicare after speaking with defendant, and Medicare informed her that it will be investigating defendant for fraud.  It does not matter whether A.R.

---

[11]    Government Exhibits 130 and 131.

[12]    Government Exhibit 132.

[13]    Government Exhibit 133.

actually reported defendant to Medicare; the relevance of the statement is rather that defendant was informed of the potential fraudulency of her actions as of that phone call, and she took subsequent steps to attempt to cover up her involvement in the CGx test order for A.R.[14]  The Court finds that the evidence is admissible for the non-hearsay purpose of showing the effect on defendant.  *See e.g., United States v. Reed*, 908 F.3d 102, 120 (5th Cir. 2018) ("Ordinarily, a statement is not hearsay if it is offered to show the statement's effect on the listener."); *see also United States v. Chavis*, 772 F.2d 100, 105 (5th Cir. 1985) (finding that customer complaints were introduced to show that defendants were notified of their existence, not the truth of their contents, and thus not hearsay).

Further, the government argues that A.R.'s statements are admissible to provide context for defendant's own statements in those conversations. Defendant's own statements on the two calls with A.R. are non-hearsay.  Fed. R. Evid. 801(d)(2)(A).  Accordingly, even if the statements by A.R. are hearsay, they are admissible as they contextualize defendant's non-hearsay statements.  *See United States v. Holguin*, 2024 WL 4625285, at *1 (5th Cir. Oct. 30, 2024) ("[E]ven if the statement is considered hearsay, it was

---

[14]     Defendant additionally objects to the admission of the government's evidence of defendant's next steps regarding A.R.  The admissibility of that evidence is discussed in Section II.C.

admissible to provide context for [defendant's] response, which was properly admitted as an admission of a party opponent.") (citations omitted); *United States v. Robinson*, 87 F.4th 658, 673 (5th Cir. 2023) ("[W]hen a defendant's recorded statements are admissible as a party opponent admission under Rule 801(d)(2)(A), an interlocutor's statements, even if considered hearsay, are admissible to put [the defendant's] statements into context.").

The government contends that the other two exhibits, the CGx requisition form and the Bronson patient notes, fall under the business records exception to hearsay. The government is correct. *See* Fed. R. Evid. 803(6); *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) (noting that Rule 803(6) "provides a hearsay exception for records kept in the course of any regularly conducted business activity," which would include medical clinics). The government has provided a business records affidavit for all patient files maintained by Bronson from the former owner. These exhibits therefore meet the requirements set by Federal Rules of Evidence 803(6) and 902(11) and are admissible.

Accordingly, the Court overrules defendant's objections to government exhibits 130, 131, 132, and 133.

### B. Bank Record (Government Exhibit 200)

The government seeks to admit an excel sheet that shows the credits and debits in defendant's J.P. Morgan Chase bank account. Defendant objects to admitting the full bank record, asserting that it includes other, non-Bronson, credits and debits which she contends are irrelevant and prejudicial. The purpose of the scheme as charged in the Indictment was for defendant to receive kickbacks in exchange for causing the submission of fraudulent claims in order to enrich herself and use the money for her own personal use.[15] Evidence of the deposits from Bronson and her personal expenses in defendant's bank account are relevant to the scheme charged, because they show that defendant received the money from Bronson and used it for her personal benefit. Further, the government intends to use the full bank records to show that defendant was struggling financially and therefore had a motive to enter the scheme. It also contends that the records will show that the defendant received more money from Bronson when she signed more CGx orders, and therefore she had a motive to continue the scheme. "Motive is always relevant in a criminal case. . . . And with financial crimes, the more money, the more motive." *United States v. Hill*, 643 F. 3d 807, 843 (11th Cir. 2022); *see also United States v. Kinchen*, 729 F.3d 466,

---

[15]    R. Doc. 1 at 5-6.

472 (5th Cir. 2013) (finding that evidence that goes to motive is relevant because, even when motive is not an element of the criminal offense, it "is part of the story and provides context").  And, while defendant objects that the bank records show other sources of income besides from Bronson, this evidence is relevant to the government's theory that defendant treated the Bronson income and other income differently.  Specifically, the government will introduce evidence that defendant failed to disclose her Bronson income from her bankruptcy filings but not her other income.  The records of other income are relevant to the government's purposeful concealment theory. Further, the defendant has failed to provide a persuasive argument for undue prejudice.

Accordingly, the Court overrules defendant's objection to government exhibit 200.

## C. Bronson Medical Documents (Government Exhibits 409, 411)

Defendant states she is objecting to exhibits 409 and 411, but she makes no argument as to exhibit 411.  As to exhibit 409, defendant mischaracterizes the contents of this exhibit.  The exhibit is an email from defendant to a contact at Bronson.  The email states:

> Hi [redacted],
> I'm not sure if the staff communicated to you that a patient allegedly called Medicare on the company and me??   I had asked that her particular RX not be filled under my name.  Did you get this message?  Thanks,[16]

The email reflects that defendant was not, as she argues, simply cancelling the CGx order for A.R.  Rather, defendant asked whether Bronson received her request that A.R.'s "particular RX not be filled under [her] name."[17]  The government argues that defendant was attempting to remove her name from A.R.'s order to avoid scrutiny from Medicare.  This, the government argues, goes to defendant's knowledge that ordering the CGx testing was fraudulent and that she intended to conceal the fraud.  The government is correct that the evidence is relevant for those reasons.  The Court finds that the evidence is relevant, and its probative value is not substantially outweighed by unfair prejudice.

Accordingly, the Court overrules defendant's objection to government exhibit 409.

Additionally, because defendant has stated no basis, and the Court can find none, the Court overrules her objection to government exhibit 411.

---

[16]     Government Exhibit 409.  *See also* R. Doc. 64 at 6.
[17]     Government Exhibit 409; *see also* R. Doc. 64 at 6.

### D. Books Authored by Lawson Baker (Government Exhibits 502-504)

Defendant objects to the introduction of three of the five books (government exhibits 502, 503, 504) authored by defendant that the government seeks to admit, on the basis that they were published after the events in the indictment and would thereby create an unfair inference of intent or awareness.  The government argues that the books are based on information that existed at or before the events in the indictment, and that the publication date is not indicative of the date at which defendant learned of its contents.  Defendant asserts that the books were "authored" after the events of this case, but she provides only the years of publication.  The publication dates do not show when the books were actually researched or written, or when the contents of the books were known by defendant. Therefore, unless the government can establish that the information in the books, or portions thereof, was written and researched, or known by defendant, before or during the events in the indictment, the Court finds the probative value of this evidence low, and the risk of unfair prejudice outweighs its probative value.

Accordingly, the Court defers ruling on these objections.  To use government exhibits 502, 503, and 504, or parts thereof, the government

must first establish that the exhibit reflects information that defendant had at or before the events in the indictment.

## E. Bankruptcy Records (Government Exhibits 600-605)

The Court has already held[18] that evidence of defendant's concealment of Bronson income in the bankruptcy records is intrinsic to the crime charged, and its probative value is not outweighed by the risk of unfair prejudice. For the same reasons, the bankruptcy records are admissible.

Accordingly, the Court overrules defendant's objections to government exhibits 600-605.

## F. Summary Exhibits (Government Exhibits 800-803)

Defendant objects to four of the summary charts the government seeks to use during trial. As an initial matter, summary charts may be used. Federal Rule of Evidence 1006 provides:

> The Court may admit as evidence a summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court, whether or not they have been introduced into evidence.

---

[18]    R. Doc. 62.

Fed. R. Evid. 1006(a); *see also United States v. Tannehill*, 49 F.3d 1049, 1056 (5th Cir. 1995).  As the government points out, the alleged scheme was nearly a year-long and involves numerous records.  Accordingly, the Court finds that the use of summary charts is appropriate here.  The Court considers defendant's specific objections to government exhibits 800-803 below.

1. *Government Exhibit 800 — Medicare Claims for CGx Ordered by Defendant*

Summary chart 800 displays the approximate time period that the alleged scheme took place, the total billed to Medicare for CGx tests during that period, the total Medicare paid for these tests, the number of beneficiaries, and the number of those beneficiaries who had a prior relationship to defendant.  Defendant asserts that the chart is misleading, as it implies that defendant personally billed the $12,181,983 and personally received the $1,500,271.21 paid out by Medicare.  The Indictment alleges that defendant "executed a scheme and artifice to defraud Medicare by submitting, and *causing to be submitted*, approximately $12.1 million in false and fraudulent claims to Medicare . . . of which Medicare reimbursed approximately $1.5 million."[19]  The Indictment is consistent with the health

---

[19]    R. Doc. 1 at 5 (emphasis added).

care fraud statute, which criminalizes both direct submission of fraudulent claims and *causing* the submission of fraudulent claims. *See* 18 U.S.C. § 1347 (emphasis added). The government argues that defendant caused the submission of fraudulent claims because, without an ordering provider, the lab could not bill an insurer for tests. The Court finds that submission of orders is probative of causation. The use of the $12.1 million billed is therefore not misleading as it is directly relevant to the scope of defendant's alleged criminal liability.

Regarding defendant's objection to the inclusion of the amount paid by Medicare on the claims, the Court finds this objection baseless. Defendant cannot seriously contend that in Medicare fraud case, the government misleads the jury by demonstrating the amount paid by Medicare on allegedly fraudulent claims. This objection is frivolous. Further, the government will call a witness to explain the Medicare reimbursement process as it involves the testing lab, Bronson, and defendant. Defendant is free to cross-examine the government witnesses about the Medicare billing process. As the Court finds that this summarizing exhibit is relevant to the statutory basis for defendant's alleged criminal liability, its probative value is not substantially outweighed by undue prejudice or the risk of misleading the jury.

Accordingly, the Court overrules defendant's objection to government exhibit 800.

### 2. *Government Exhibit 801 — CGx Claims Billed to Medicare and Payments Made to Defendant*

Government exhibit 801 is a graph with two lines representing the billing by (or caused by) defendant for CGx tests and Bronson's monthly payments to defendant for CGx orders. An additional line marks the time of defendant's bankruptcy filing. The government argues the chart shows CGx testing ordered by the defendant by month and the corresponding monthly payments made to the defendant by Bronson for those orders. Additionally, the government argues that the chart shows that defendant's income from Bronson increased as she ordered more CGx tests. Defendant argues the chart is deceptive and prejudicial.

Defendant argues that the chart includes payments from Bronson for non-CGx test orders. This is inaccurate as the chart is limited to payments to defendant for CGx orders. Defendant also objects to showing the amount billed to Medicare, again on the grounds that she did not bill Medicare. This objection is baseless. As the Court ruled, she allegedly had a role in billing because she was the ordering provider. Defendant also objects to the chart

showing the date of the bankruptcy filing, which coincides with a spike in CGx billing.  The date of her bankruptcy filing is relevant to the charges against her.

Further, defendant has not objected to the admission of the underlying data.  Defendant's objections are based on her perception that the data is displayed in a prejudicial manner.  That the chart is prejudicial to defendant does not mean it is inadmissible; it's prejudicial effect must substantially outweigh the probative value of the evidence for that to be the case.  Fed. R. Evid. 403.  The chart is probative of defendant's motive to continue ordering CGx tests.  The Court finds that the probative value is not substantially outweighed by undue prejudice.

Accordingly, the Court overrules defendant's objection to government exhibit 801.

### 3. Government Exhibit 802 — Beneficiary Age When Defendant Ordered CGx Test

Government exhibit 802 is a bar chart showing the ages of beneficiaries when defendant ordered the CGx tests.  Defendant argues that the chart is prejudicial and of no probative value.  The government argues that the age of patients is relevant because its expert will testify that CGx testing is most

useful with younger patients, and the chart reflects the vast majority of the tests defendant ordered were for patients over fifty years old. Indeed, based on the data in the chart, only 7.14% of the CGx tests ordered by defendant were for individuals younger than fifty. The government argues that the disproportionate amount of tests ordered for older patients is probative of whether the tests ordered were medically necessary. Whether the CGx tests were medically necessary is highly relevant to the charges against defendant. The Court finds that the probative value of this evidence is not substantially outweighed by undue prejudice.

Accordingly, the Court overrules defendant's objection to government exhibit 802.

### 4. Government Exhibit 803 — Defendant Approval of CGx Testing

Government exhibit 803 is a pie chart that compares defendant's approval and non-approval of CGx tests. Defendant objects that the chart is not clear that it includes orders approved by defendant for CGx tests payable by insurers other than Medicare. She contends that the chart suggests that she approved more tests billed to Medicare than was the case. This is incorrect. Directly below the title in large font, the chart states that it includes Medicare and other insurers. Further, government exhibit 800

identifies the specific number of CGx tests defendant caused to be billed to Medicare during the alleged scheme. The Court finds that the chart is clear that it includes approved orders payable by insurers besides Medicare. The Court therefore rejects defendant's argument that the chart is misleading and prejudicial for the grounds asserted. Further, defendant can cross-examine the government's witness about the exhibit.

Nevertheless, to the extent that the chart includes orders approved by defendant that were payable by insurers other than Medicare, it includes other act evidence which the government did not include in its notice of intent to use 404(b) evidence. The government has not made any showing that the evidence satisfies the requirements of 404(b). The government should have provided written notice and reasons prior to trial.

Accordingly, the Court directs the government to submit a revised exhibit that includes only CGx tests payable by all parts of Medicare.

## III.   CONCLUSION

For the foregoing reasons, the Court OVERRULES all of defendant's objections to the government's exhibits, except as to government exhibit 803 and as to government exhibits 502-504, on which the Court DEFERS ruling.

New Orleans, Louisiana, this __18th__ day of July, 2025.

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE